## McELROY v. BRITISH-AMERICA ASSUR. CO.

(Circuit Court, D. Washington, N. D.  August 5, 1898.)

### No. 617.

1. INSURANCE—AGENCY—IMPUTED NOTICE.
    An agent of one insurance company who applies to the agent of another company to take part of the insurance he has negotiated on a vessel, and who receives from such other agent the policy issued by his company and delivers it to the insured, after attaching thereto a slip directing it to be returned to him for renewal, does not thereby become the agent of the latter company, so as to make it chargeable with his knowledge of an excess of insurance above that allowed by such policy.

2. SAME—ESTOPPEL—ACCEPTANCE OF BENEFITS.
    When an insurance agent has taken for his company part of the insurance negotiated by an agent for another company, the fact that he has made a charge on his books against such agent for the premium

does not estop his company from questioning the validity of the policy, on the theory of the acceptance of benefits by it, where no part of the premium has in fact been received by the company or the agent.

Harold Preston and L. C. Gilman, for plaintiff.

J. B. Howe and S. H. Piles, for defendant.

HANFORD, District Judge. This is an action on a fire insurance policy for $3,000, written by C. A. McKenzie, who was at the time the Seattle agent of the British-America Assurance Company of Toronto, Canada, covering the steamer Cricket, which was destroyed by fire a short time after the date of the policy. The policy is in the form known as the "Standard Policy," and it is therein stipulated that "this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." At the time of the destruction of the steamer there was another policy in favor of the owner for the amount of $3,500, and yet another policy for the sum of $3,500 in favor of a mortgagee of the vessel, making altogether insurance amounting to $10,000. On a slip attached to the policy it is provided as follows: "$6,500.00 insurance in all permitted, concurrent herewith,"—so that there was $3,500 insurance upon the vessel in excess of the amount which the insurance company agreed should be carried, and the company rests its defense upon the ground that this excess of insurance constitutes a breach of the above condition of the contract. This defense is met by the plea that, at the time of delivery of the policy sued upon, the defendant company was informed and had notice that there was then in existence insurance upon the vessel, including the amount for which this policy was written, amounting to the total sum of $10,000, and, having that knowledge, executed and delivered this policy to the owner of the vessel, and the defendant is thereby estopped from claiming that said policy is void by reason of overinsurance.

On the trial of the action it was proved that the application for the policy was made to McKenzie, by the firm of Calhoun & Co., general insurance agents, who were not authorized to represent the defendant company as its agents, but were business rivals of McKenzie. Mrs. Power, the owner of the vessel, had no dealings with McKenzie, except as she was represented by Calhoun & Co. McKenzie was informed by Calhoun & Co. that they wished to place insurance to the amount of $6,500 upon the vessel, and asked him to take $3,000 of the amount. McKenzie was not informed and had no notice whatever that other insurance had been written or was intended to be placed upon the vessel for any amount whatever in excess of $6,500. On the part of the plaintiff, testimony was introduced tending to prove that Calhoun & Co. did know that the steamer was to be insured through another agent for the sum of $3,500 for the benefit of the mortgagee. Calhoun & Co. solicited the insurance from the captain of the steamer representing the owner, and received from him payment of part of the premium, and agreed to extend to him credit for a definite period for the unpaid part, but no part of the money collected on account of the

premium was received by the defendant company nor by McKenzie. Calhoun & Co. received the policy from McKenzie for delivery to the insured, and, before delivery, pasted thereon an advertising slip, which reads as follows: "Return for renewal, transfer, or indorsement to Calhoun & Co., Insurance, S. E. Cor. Yesler Ave. and Commercial St., Seattle, Wash." It was also proved upon the trial that previous to the issuance of this policy there was a general understanding between McKenzie and Calhoun & Co. that they would divide the agent's commission on all business obtained by Calhoun & Co. and placed with companies represented by McKenzie, and that between themselves, for the purpose of renewing insurance, such business should be regarded as belonging to Calhoun & Co. The court granted a motion interposed by the defendant for a peremptory instruction to the jury that a verdict be returned in favor of the defendant, and the case has been argued and submitted upon a motion for a new trial.

In passing upon the motion for a new trial, I assume that if the defendant company or its authorized agent did have actual notice of the existence of other insurance upon the vessel in excess of $6,500, and notwithstanding such notice issued the policy and received and retained the premium therefor, it would be estopped to say that the policy so issued is void. Giving the plaintiff the benefit of the testimony in his behalf, to the effect that Calhoun & Co. were so notified before the policy in suit was written or delivered, the plaintiff's right to claim an estoppel depends upon the proper decision of the question whether or not Calhoun & Co. were the agents of the defendant company, or were by the defendant company held out to be its agents in such a way as to justify the insured in dealing with that firm as though they were authorized to act for the defendant as its agents. I hold that the testimony shows that McKenzie did authorize Calhoun & Co. to deliver the policy to the insured and to collect the premium. To this extent Calhoun & Co. were constituted the agents of the defendant company. But the agency was limited. Calhoun & Co. were not authorized to bind the defendant company by any other or different contract than that expressed in the policy which they received for delivery. Their authority was that of a messenger to deliver this particular policy.

The case of May v. Assurance Co., 27 Fed. 260, relied upon by the plaintiff as a precedent for ruling that Calhoun & Co. were legally agents of the defendant, appears to be very similar in its facts to this case, and yet it is fair to infer that the question in that case was different, and there is substantial ground for drawing a distinction. In the case referred to, an insurance agent procured a policy for the plaintiff, to be written by the defendant company. The plaintiff was a customer of the agent who made application for the policy. There was evidence of a custom of insurance agents to divide insurance business with other agencies in the same city when they received an application for a larger amount of insurance than they cared to place with their own companies. The defendant's agent who issued the policy was ignorant of the condition of the property insured, and I infer that payment of the policy was re-

sisted on the ground that there was something in the condition of
the property affecting the risk which was not known to the agent
who issued the policy; but the court held that the company was
chargeable with knowledge of facts as to the condition of the risk
which were known to the agent who applied for the policy.    The
decision appears to be founded upon the idea that, before issuing
an insurance policy, the insurer may inspect the property or adopt
any other method for ascertaining its condition, and that, if he
elects to rely upon the knowledge and judgment of another, he
should be bound the same as a purchaser of property, who buys
after having had an opportunity to inspect it, is held to be bound
by his contract, notwithstanding any after-discovered defect which
might have been ascertained by inspection.    But the amount of in-
surance upon the steamer Cricket could not have been ascertained
by inspection.    Without evidence of circumstances which would
naturally create suspicion, the defendant cannot be considered as
having neglected any duty, nor as having elected to rely upon the
judgment or knowledge of any one.    The defendant company ten-
dered a policy containing a limitation of the amount for which the
vessel might be insured, and a condition that, if insurance in excess
of the amount of $6,500 should be placed upon the vessel, this policy
should be totally void.    When the policy containing these condi-
tions was accepted, the defendant company was not obliged to pre-
sume that the condition would be disregarded, nor to make inquiry
to ascertain if it had been disregarded, nor to place any dependence
upon Calhoun & Co. to obtain information as to the amount of other
insurance then existing or to be placed upon the steamer.    If ap-
plied to the facts of this case, the argument of the opinion in May
v. Assurance Co. is not satisfactory, to my mind.    Judge Brewer
says:  "The plaintiff did not go to an insurance broker to employ
him to solicit insurance.    He never thought of employing an agent
to act for him; but he, as principal, wanting to buy insurance,
went to a man who was selling insurance, and proposed to buy from
him $20,000 worth of insurance."    The same argument has equal
force, turned the other way; for, referring to the case in hand, it
may be said that the defendant did not employ Calhoun & Co. as its
agents to solicit insurance.    But the company, as principal, having
insurance to sell, received an application from Calhoun & Co. to
buy insurance for Mrs. Power.    If Calhoun & Co. may be considered
as representatives of the defendant in negotiating with the insured,
it must also be noted that they spoke for and acted in behalf of
Mrs. Power in negotiating with the insurer.    As middlemen they
acted in behalf of both parties to the contract, and, if their knowl-
edge of the intention of the insured as to the amount of insurance
to be placed upon the vessel can be imputed to the insurer, their
knowledge of the intention of the insured to limit the amount of
insurance to a total sum of $6,500 must also be imputed to the insured.
Having that knowledge, she cannot say that she was misled to her
prejudice by the issuance of the policy, and the chief element of an
estoppel is lacking.

The insured has no just ground for claiming that the defendant company held out to the public that Calhoun & Co. were its agents. No act, declaration, or silence of the defendant company is shown to have operated as an inducement to the making of this contract. The paster on the outside of the policy does not represent Calhoun & Co. to be agents of this company, with authority to bind the company as to any conditions or terms inconsistent with the policy. The paster is, at most, an invitation to the policy holder to return it to Calhoun & Co. for renewal, transfer, or indorsement. If the insured had been dissatisfied with the terms of the policy, she might have treated this paster as a direction to return it for alteration to Calhoun & Co.; but, so far as appears from the evidence, no reliance whatever was placed upon this paster, and the policy upon its face shows that McKenzie was the Seattle agent of the company.

In the argument it was urged that the defendant is estopped to deny the validity of the policy, or has waived the condition as to overinsurance, by accepting the benefits of the contract. The rule as to the effect of accepting benefits is stated in section 148 of Mechem on Agency, as follows:

"It is a rule of quite universal application that he who would avail himself of the advantages arising from the act of another in his behalf must also assume the responsibilities. If the principal has knowingly appropriated and enjoyed the fruits and benefits of an agent's act, he will not afterwards be heard to say that the act was unauthorized. One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own, with all its burdens as well as all its benefits. He may not take the benefits and reject the burdens, but he must either accept them or reject them as a whole. But here, as in other cases, it is indispensable that the principal should have had full knowledge of the material facts, or that he should have intentionally accepted the benefits without inquiry. Otherwise the receipt and retention of the benefits of the unauthorized act is no ratification of it."

The application of this rule cannot in any way operate to the advantage of the plaintiff. It must be observed that the rule does not bind the principal where the benefits have been without his knowledge received or appropriated by the agent, whose unauthorized act is the subject of controversy. The principal must himself receive the benefit, receive it intentionally, and retain it, after having been apprised of the facts of the transaction, or intentionally act without inquiry as to the facts when the circumstances are such that a prudent man should inquire, or else he cannot be held to have ratified an unauthorized act. Neither the defendant company nor its authorized agent, McKenzie, received, appropriated, or enjoyed any benefit or advantage from this contract, and no facts or circumstances were brought to the attention of McKenzie which required him to make inquiry as to any matter communicated to Calhoun & Co. by the insured. McKenzie made a charge against Calhoun & Co. of the amount of the premium. But no benefit can accrue to him or to the defendant from that entry in his books, because, the policy being void, the premium cannot be collected.

It is my conclusion that the evidence fails entirely to show that the defendant has committed any act justifying a belief on the part

of the insured or her agent that it had assumed an obligation differ-ent from what the policy sets forth, and therefore the instruction given to the jury to return a verdict for the defendant was correct. Motion denied, and judgment upon the verdict ordered.